DIANE K. RAUSHENBERGER, appellant, v. WILLIAM W. RAUSHEN-BERGER, appellee.

No. 51829.

(Reported in 138 N.W.2d 879)

DECEMBER 14, 1965.

William H. Wellons, of Muscatine, for appellant.

A. Wayne Eckhardt, of Muscatine, for appellee.

SNELL, J.—This is an action for divorce wherein plaintiff-wife claims defendant has been guilty of such cruel and inhuman treatment as to endanger her life and health and cause her great mental anguish. The trial court found considerable merit in plaintiff's complaints and defendant's conduct subject to criticism, but that the evidence was not sufficient for a decree of divorce. Plaintiff has appealed.

Plaintiff and defendant were married September 30, 1961, and separated September 1, 1963. They are the parents of a son born November 18, 1963, a few months after the parents' separation.

Plaintiff and defendant's life together was one of discord, dissonance and lack of consideration on the part of defendant. Defendant has been rather allergic to work and disinclined to let work or the comfort of plaintiff interfere with his rest or entertainment. The parties are of different religious faiths but defendant's loyalty to his is questionable.

When plaintiff and defendant were married both were employed. Defendant's employment lasted two weeks. He was then unemployed for about three months. He collected $40 per week unemployment compensation, part of which, together with plain-

tiff's wages, was used for family living expenses and the remainder for defendant's personal spending. His next job lasted about eight months. His place of employment closed. His next job lasted two weeks and was lost when he did not go to work. A week later he obtained another job that lasted six weeks.

After four weeks without work he found a job that lasted eight weeks. He was laid off. After about three months he obtained work that lasted a little more than three months. He was discharged because he did not give sufficient notice that he was going to National Guard Camp. After camp he took two weeks' vacation. He said he wanted to rest. Before his next regular job he was offered temporary work but was not interested.

He was next examined and hired for another job but did not report.

His next job lasted about eight weeks and the next 58 or 59 days. At the time of trial, about 15 months after his wife left, he had been employed steadily for nearly a year. In answer to a question if he liked to work he answered, "Well, it's a—necessity to make a living." It is a fair inference that without his wife as a source of support he found work more of a necessity.

Defendant had time and money, sometimes obtained from his wife, for fishing, bowling, playing and watching baseball, stock car racing and television, but not enough energy to help his wife or enough money to pay the bills. He had three different cars and much of the time plaintiff made the payments thereon as well as paying other living expenses.

Plaintiff has been steadily employed except for a short time prior to and eight weeks after the birth of her baby. She paid the doctor and hospital expenses incident to her confinement. Since the parties separated defendant has contributed nothing except $15 as a Christmas present to the baby and $60 given to plaintiff.

Even when not otherwise employed defendant would not help with the household chores. This attitude continued throughout plaintiff's pregnancy. Plaintiff carried their laundry down and back up two stories or to a friend's or the laundromat. On one occasion when asked to help defendant said he was watching bowling and did not want to be bothered.

Defendant was inconsiderate of plaintiff's health. He would not take her home out of inclement weather when she went with him to watch ball games or races. He was angry when plaintiff had an emergency appendectomy while defendant was at guard camp. He argued with the hospital nurses and jiggled plaintiff's bed to her great physical discomfort and mental distress.

One time he took the keys to their car so that plaintiff was left standing in the rain after work.

He frequently took plaintiff to a friend's house and left her there for several hours without explanation.

He objected to plaintiff's purchase of material for clothes but took $30 of their money to buy a ball glove.

Defendant was easily angered and unduly critical. A few times he locked plaintiff out of their apartment. Twice before the final separation she left him and at defendant's request and promises of better treatment returned. At times in the presence of others his language was loud and vulgar to plaintiff's great embarrassment.

When plaintiff was about seven months pregnant both plaintiff and defendant were unemployed, short of money and about to move into a room at his parents' home. Defendant went fishing. When he returned plaintiff asked for help with the packing. Defendant swore at plaintiff, said he was too tired to help and went to bed. On the last evening in their apartment plaintiff asked for help in moving the refrigerator and stove. Defendant became angry, shoved plaintiff out of the apartment and locked the door. He refused to let plaintiff in. She went first to his parents and then to her parents and has not lived with defendant since.

Plaintiff obtained work as a baby-sitter and saved her money for her confinement expense.

Plaintiff was happy in the prospect of motherhood but became highly nervous, upset and generally ill. This was probably due in part to her pregnancy but we are convinced that defendant's attitude, actions and lack of help were injurious to her wellbeing.

As the time of the baby's birth approached defendant called repeatedly by phone and argued about going to the hospital with

plaintiff. He finally called and said plaintiff could come back to him on his conditions or have fun having the baby alone and paying for it herself. That is what plaintiff did.

Further recitation of the details disclosed by the record would serve no useful purpose. The record shows a callous and inconsiderate course of conduct beyond what plaintiff should have to endure.

In positive language plaintiff testified that she would not return to her husband. When asked about her marriage she said, "It's done."

Defendant denied, modified or depreciated much of plaintiff's testimony, but her testimony was sufficiently corroborated, including the deleterious effect on her health.

I. The problem is whether the conduct of the defendant was such as to endanger the life of plaintiff. The divorce court is not a forum for the easy correction of every marital mistake or for dissolution of marriage vows after every family squabble, but even under our rather strict statute it is not necessary to prove immediate peril or danger to life from any one incident.

II. Life may be endangered by impairment of health. It is sufficient if danger is reasonably apprehended. It is not necessary that actual physical mistreatment be shown. Each case must rest on the particular facts shown. Howe v. Howe, 255 Iowa 280, 282, 122 N.W.2d 348, and authorities cited therein. See also Hand v. Hand, infra.

III. So much has been written on various factual situations that no useful purpose would be served in this case by exhaustive historical review. We think this case is governed by our most recent pronouncement in an analogous although reverse situation as to husband and wife. In fairness to the trial court it should be noted that the case at bar was tried and decided before our pronouncement in Hand v. Hand, 257 Iowa 643, 133 N.W.2d 63.

In that case we began by quoting the old copy book maxim "Water dripping day by day will wear the hardest rock away." We then said:

"It may be conceded that no one act of the defendant,

standing alone, supports a finding of cruelty sufficient to warrant a decree of divorce. But it is equally true that a continued course of wearing conduct, regularly, almost daily, indulged in, may constitute a strain on the nerves and sensibilities which in time may add up to serious damage to health. The constant dripping of the water of criticism, unjust accusations, belittling remarks, and constant evidence of an antagonistic disposition will in the course of time wear away the rock of health and so endanger life." Loc. cit. 645 of 257 Iowa, 65 of 133 N.W.2d.

In the case before us as in the Hand case there is ample evidence of continuing discord. If the fault was because of defendant's attitude and conduct, if the onus for the daily troubles was on him, and the difficulties were beyond the usual marital disagreements there may be "cruel and inhuman treatment" within the statute. Hand v. Hand, supra.

We think the course of conduct shown by the record sufficient to constitute inhuman treatment under the statute and our pronouncements.

We also think the record as to the effect of defendant's conduct on plaintiff's health and welfare sufficient to show danger if continued.

IV. Plaintiff is at present the sole support of the parties' two-year-old son. While plaintiff is at work her mother cares for the baby. Plaintiff in a normal week earns $52 net. Defendant according to his own testimony is now earning $85 to $86 with take-home pay about $70 per week. He contributes nothing to the support of plaintiff or their son. Such disparity in meeting obligations is not good and should not continue. The future of the child as well as of plaintiff requires that something be done. Plaintiff says she will not return to defendant. We are not disposed to condemn plaintiff and her son to a choice between a life of discord with defendant and financial difficulty from lack of paternal contribution.

V. Since the trial court denied the plaintiff a divorce no order was made regarding alimony, child support, property division, child custody or attorney fees.

The case is reversed and remanded to the trial court with directions to enter a decree of divorce for plaintiff and to determine the other questions necessary for a final determination.

We think the order should be that custody of the child be awarded plaintiff with adequate visitation rights to defendant. The order should also provide for child support, division of personal effects, payment of debts and an allowance for attorney fees.—Reversed and remanded.

All JUSTICES concur.