Lois L. Britven, appellee, v. Henry Britven, appellant.

No. 52167.

 .

OCTOBER 18, 1966.

Boyle & Schuler, of Clear Lake, for appellant.

Walter C. Schroeder, of Mason City, for appellee.

RAWLINGS, J.—Plaintiff-wife sought a divorce, alimony and general equitable relief, claiming cruel and inhuman treatment

by defendant-husband, which he denied.

Following trial plaintiff was granted a divorce with other redress and defendant appealed.

The parties were married March 25, 1962, but separated May 18, 1962. At time of marriage plaintiff was 60 and defendant 58. The subject divorce action was commenced July 3, 1962.

About eight months prior to and in contemplation of the marriage the parties entered into a prenuptial agreement here offered in evidence by defendant. The trial court adjudged this instrument to be of no legal force or effect.

In addition plaintiff was awarded lump sum alimony of $16,280, judgment for $2800 unpaid temporary alimony with interest, and some miscellaneous items of personalty.

On appeal defendant urges the following propositions in support of a reversal: (1) Insufficiency of evidence as to cruelty; (2) insufficiency of corroboration; (3) error in adjudging the prenuptial agreement invalid; (4) error in award of permanent alimony; and (5) error in award of judgment for unpaid temporary alimony.

I. In cases such as this much depends upon the credibility of witnesses, their attitude and demeanor, and we give considerable weight to the fact findings of the trial court but are not bound by them. Rule 344(f)(7), Rules of Civil Procedure; Cimijotti v. Cimijotti, 255 Iowa 77, 79, 121 N.W.2d 537; and Klepper v. Klepper, 234 Iowa 1138, 1142, 15 N.W.2d 213.

II. The record discloses these parties had each been previously married, both terminated by a divorce.

The marriage of plaintiff and defendant followed a close association or courtship of about eight years during which they had admittedly been intimate.

Plaintiff's testimony discloses attempted sodomy by defendant the first week of marriage, and when plaintiff refused the defendant pushed her out of bed telling her to get out and stay out. She spent the night on the davenport.

Plaintiff aided in entertaining guests in the home but after one such occasion he pushed and slapped her. When she went onto the balcony he locked her out but she was later permitted to reenter the home.

On several occasions he falsely accused her of associating with other men and once charged she had entertained a man in the bedroom.

Plaintiff also stated defendant had given her the silent treatment to which she ultimately voiced objection.

May 18, 1962, defendant again attempted sodomy and when plaintiff remonstrated defendant kicked her out of bed, onto the floor, causing pain in her back which had before been so injured as to require a fusion operation. He again told her to get out, go back to her apartment, return to her job, and he could get $50,000 for the house.

After this last incident plaintiff went to the apartment of an unmarried sister, Ann Crawford, where she has since remained.

The sister was not told of defendant's alleged sexual misconduct until later.

However, plaintiff promptly consulted Doctor Chang about the pain in her back for which he gave her a shot and later supplied some pills. She told the doctor about defendant's reprehensible conduct. He was not called as a witness.

At time of trial plaintiff stated she had become nervous, lost weight, was broken in health and spirit, took medicine and could not sleep, that she loved defendant when they married but became afraid of him and his practices.

All witnesses called, including defendant, said plaintiff was a cultured, refined, sensitive, gracious person, proud of her home, a good housekeeper, affectionate, considerate of defendant, well behaved, and "high class".

The trial court deemed plaintiff to be an honest, refined and sensitive person, the defendant being unlike her in all these respects. See Hardman v. Hardman, 256 Iowa 931, 933, 129 N.W.2d 626.

It is remotely possible that to some people reprehensible conduct such as here disclosed might be of little or no consequence. But to a cultured, refined and sensitive woman, it would undoubtedly constitute cruelty such as to endanger the life of the person offended. We have so held. Section 598.8, Code, 1962; Smith v. Smith, 258 Iowa 557, 560, 561, 139 N.W.2d 453,

456; Raushenberger v. Raushenberger, 258 Iowa 366, 370, 138 N.W.2d 879, 881; Hand v. Hand, 257 Iowa 643, 645, 133 N.W.2d 63, 65; Cimijotti v. Cimijotti, 255 Iowa 77, 79, 121 N.W.2d 537; Worthington v. Worthington, 238 Iowa 1044, 1049, 29 N.W.2d 186; and Low v. Low, 232 Iowa 1114, 1117, 7 N.W.2d 367.

More particularly, conduct such as that here described, if sufficiently corroborated, constitutes good and sufficient cause for divorce upon the ground of cruel and inhuman treatment.

III. Plaintiff's sister said she returned to the apartment after work the day after plaintiff arrived there, at which time she had a scared look, was nervous, crying and looked scared for a month.

According to the sister plaintiff evidenced some marital trouble before the separation, was unusually quiet, and after the parties here involved had separated plaintiff could not sleep, lost weight, was restless, looked haggard, aged tremendously, complained of pain, refused to go out, avoided people, concentrated poorly, and gave evidence of cracking up, all of which was out of character for plaintiff.

This witness did not think plaintiff could live with defendant, was afraid of him, not knowing what he might do, and expressed the belief plaintiff could not take it.

Defendant disclaimed any attempted sodomy, kicking plaintiff out of bed, locking her out of the house or slapping her, but did not deny the accusations of infidelity, or that he had told her to get out, or with having administered the silent treatment. He was also evasive and at times inconsistent in some of his denials and attempted explanations, noticeably in connection with his testimony relative to sexual behaviorism and plaintiff's treatment of him.

The question now presented is whether the foregoing testimony served to adequately corroborate the plaintiff.

In Arnold v. Arnold, 257 Iowa 429, 435, 133 N.W.2d 53, 57, we said: "Corroboration is required to prevent collusion between the parties. It is not necessary, however, that every detail of plaintiff's testimony be corroborated or that the corroboration alone sustain the decree."

And, it is sufficient if it *tends* to establish the ground relied upon for obtaining the divorce. Cimijotti v. Cimijotti, 255 Iowa 77, 80, 121 N.W.2d 537.

Furthermore, corroboration may be supplied by direct or circumstantial evidence, and by defendant's testimony, or failure to deny that of the plaintiff. Hand v. Hand, 257 Iowa 643, 647, 133 N.W.2d 63, 66; Lane v. Lane, 253 Iowa 92, 96, 111 N.W.2d 286; Payton v. Payton, 252 Iowa 772, 776, 108 N.W.2d 358, 86 A. L. R.2d 416; Brannen v. Brannen, 237 Iowa 188, 189–192, 21 N.W.2d 459; Klepper v. Klepper, 234 Iowa 1138, 1142, 15 N.W.2d 213; and Nelson on Divorce and Annulment, Second Ed., section 26.14.

Defendant apparently contends failure to call Doctor Chang as a witness weighed heavily against plaintiff in the corroboration of her claim of cruelty.

In taking this position he cites Jewett v. Jewett, 252 Iowa 883, 109 N.W.2d 36. There the plaintiff-wife was asked if she would permit the defense to call her physician as a witness and she refused. Also, the court found, in the absence of medical testimony, no proof of cruelty such as to endanger life had been shown.

In the case now before us failure to call the doctor was not determinative. It was simply one of many factors to be weighed and considered in determining the right of plaintiff to the relief prayed.

It is to us evident the trial court acted accordingly and found other adequate corroboration of cruelty which endangered the life of plaintiff.

In fact the trial court found plaintiff's testimony disclosed the requisite degree of cruelty, that it was sufficiently corroborated, and there was no collusion in this case. We find no compelling cause to disagree.

IV. Plaintiff here asked a decree of divorce, alimony and such other relief as the court deemed just and equitable.

During trial defendant offered and there was admitted in evidence an instrument dated June 7, 1961, identified as a Prenuptial Agreement, signed by the parties hereto.

The court concluded defendant had failed to sustain

his burden of showing the agreement was fairly procured, it made no provision for her, and was of no legal force or effect. He first contends the agreement was not in issue. On the other hand he placed it in evidence. In that connection we have said: "Where parties proceed without objection to try an issue, even though not presented by the pleadings, it amounts to consent to try such issue and it is then rightfully in the case." Wilson v. Corbin, 241 Iowa 593, 605, 606, 41 N.W.2d 702. See also Connell v. Hays, 255 Iowa 261, 272, 122 N.W.2d 341; and Federated Mutual Implement and Hardware Ins. Co. v. Erickson, 252 Iowa 1208, 1219, 110 N.W.2d 264.

This court has also held a prayer for general equitable relief is to be construed liberally, provided it be consistent with the pleading and such as will not surprise the opposing party. Alcorn v. Linke, 257 Iowa 630, 638, 133 N.W.2d 89, 94; and Kellerhals v. Kallenberger, 251 Iowa 974, 977, 103 N.W.2d 691.

Furthermore, the subject agreement was so interwoven in the marriage relationship as to make it a matter for consideration and adjudication as a part of these divorce proceedings in determining property and alimony rights when, as here, it was properly offered and admitted in evidence. Section 598.14, Code, 1962; Bamesberger v. Bamesberger, 238 Iowa 492, 494–496, 28 N.W.2d 28; 27A C. J. S., Divorce, section 234, page 1065; 26 Am. Jur., Husband and Wife, sections 303, 304, pages 903, 904; and Nelson on Divorce and Annulment, Second Ed., section 13.45.

We are satisfied the court had jurisdiction to consider, ignore, approve or nullify in whole or in part the controversial agreement and more particularly in connection with an award of alimony.

V. However, the right to so deal with this prenuptial agreement depended upon, (1) whether the agreement was entered into fairly, and (2) whether defendant breached the agreement by failing to fulfill his marriage vows.

We have already concluded defendant violated the marriage contract. This would be sufficient to vitiate the agreement. Veeder v. Veeder, 195 Iowa 587, 595, 192 N.W. 409; and 26 Am. Jur., Husband and Wife, section 299, page 900.

■ We are also persuaded plaintiff was not dealt with fairly and openly prior to and at the time she signed this pre-marriage instrument.

By its terms she was to receive no part of defendant's estate in event of his death. There was no reference to divorce or alimony but each party waived any right in the estate of the other.

Prior to and at time of marriage defendant knew plaintiff had employment but no property, while he possessed real estate and other assets of substantial value.

The record discloses defendant never discussed with plaintiff the property he owned. He simply told her to go to the office of his attorney and there sign the papers. She did so.

■ The burden was upon defendant to show the agreement was openly and fairly procured. This he did not do. See Fisher v. Koontz, 110 Iowa 498, 500, 80 N.W. 551, and In re Estate of Maag, 119 Neb. 237, 228 N.W. 537, 539.

There was no semblance of open dealing with plaintiff in this transaction. In fact the evidence discloses such concealment and unfair dealing with plaintiff as to condemn the subject contract. See 26 Am. Jur., Husband and Wife, sections 288–291, pages 893–896, and annotations, 27 A. L. R.2d 883.

VI. At time of marriage plaintiff was employed, with gross earnings of about $101 each week. A weekly pension of $30 would have been forthcoming had she worked until age 65 and she was 60 at time of marriage.

At or about the time plaintiff married defendant she quit work which terminated all her pension rights and she cannot return to that job. She claims defendant said it was unnecessary for her to work, there being plenty of it at the store. He denies this contending plaintiff quit of her own accord.

In any event the trial court concluded as follows: "* * * The plaintiff has been deprived wrongfully by the marriage from her pension; and from her security; $30 a week would aggregate $20,280 over the period of her life expectancy. Reducing that to its present value by $4000 results in $16,280 of permanent alimony to which the court believes the plaintiff is fairly and rightfully entitled under all the circumstances."

It appears this is in effect, if not in fact, the sole basis upon which the court determined the lump sum alimony to be awarded plaintiff.

Defendant complains of this and we are inclined to the belief there is merit in his position. But that alone will not entitle defendant to a reversal for as we held in Jewett v. Jewett, 252 Iowa 883, 885, 109 N.W.2d 36, a judgment or decree will be affirmed if correct in itself, notwithstanding the reasons assigned for it in the court below may have been erroneous. This being an equity action it is triable de novo in this court and it is our duty to find the facts.

Undoubtedly plaintiff was entitled to alimony and the loss of her pension rights was an important factor, but was only one of many elements to be considered in determining the amount to be allowed. Arnold v. Arnold, 257 Iowa 429, 440, 133 N.W.2d 53, 60, with citations, and MacDonald v. MacDonald, 120 Utah 573, 236 P.2d 1066, 1070. See also Babnick v. Babnick, 94 Ariz. 338, 385 P.2d 216, 217; Luithle v. Luithle, 23 Wash.2d 494, 161 P.2d 152, 156; and Plageman v. Plageman, 79 S. D. 221, 110 N.W.2d 337, 339.

Plaintiff had no property at time of either the marriage or divorce and as previously stated cannot return to her former employment. At all times here concerned defendant owned a grocery store, other realty, merchandise and cash, with a total value of more than $80,000. Both parties are in apparent good health. He operates the store and apparently still lives in the home. She has no income and lives with a sister. The marriage lasted only 54 days but ended as a result of fault on the part of defendant.

When all the facts and circumstances are considered it becomes apparent to us the alimony here allowed was excessive. In fact we conclude it should be reduced to a lump sum award of $14,000. Upon this basis alone the case should be remanded for entry of a decree consistent herewith.

VII. As a part of the final adjudication the trial court entered judgment for plaintiff in the sum of $2895.65 unpaid temporary alimony, including interest, which had been previously allowed.

Defendant contests the right of the court to do this, claiming it was not a matter in issue at time of trial on the merits.

Plaintiff counters upon the premise a court may take judicial notice of its own records and act accordingly absent error in the record.

An affidavit was filed prior to entry of the final decree showing the actual arrearage.

 We have several times held to the effect courts will take judicial notice of prior proceedings, orders, judgments and decrees in the same case without the necessity of any formal offer or physical production of the record in evidence, this rule being especially applicable where the object or purpose of the proceedings is to enforce a judgment or decree entered in the case. In re Estate of Hinkle, 240 Iowa 979, 982, 38 N.W.2d 648; Slater v. Roche, 148 Iowa 413, 417, 418, 126 N.W. 925, 28 L. R. A., N. S., 702; Haaren v. Mould, 144 Iowa 296, 301, 122 N.W. 921, 24 L. R. A., N. S., 404; 31 C. J. S., Evidence, section 50(2), page 1022; and 20 Am. Jur., Evidence, section 86, page 104.

Apparently the authorities are in varying degrees of conflict as to the right of a trial court, on grant of a divorce, to enter judgment for temporary alimony, unpaid and owing at time of entry of the final decree. In this connection no Iowa citation directly in point has been provided.

 Without passing upon the terminability of unpaid alimony awarded pendente lite we do elect to accept the holding that accrued installments of temporary alimony previously allowed in a divorce action may be saved by a judgment for the total sum then owing as a part of the final decree of divorce. See 27A C. J. S., Divorce, section 210(b)(4), page 923; 42 C. J. S., Husband and Wife, section 619(e), page 234; 24 Am. Jur.2d, Divorce and Separation, section 560, page 684; and Nelson on Divorce and Annulment Second Ed., sections 12.32 and 12.65. Also annotations, 154 A. L. R. 530.

Defendant asserts no error in the record. We find no merit in his claim that the trial court had no authority to enter judgment as a part of the final decree for the total sum of temporary alimony then unpaid and owing.

Costs are taxed to defendant; any additional attorney fees for appeal are to be paid by the parties to their respective counsel.

VIII. Except as herein modified the decree of the trial court is affirmed.

Affirmed in part, modified in part and remanded for entry of decree consistent with this opinion.

All JUSTICES concur except GARFIELD, C. J., and STUART, J., who concur in granting of divorce but dissent from Divisions IV through VII of majority opinion.

MASON, J., takes no part.