SUSAN J. BENO, appellant and cross-appellee, v. THOMAS N. BENO, appellee and cross-appellant.

No. 52408.

(Reported in 149 N.W.2d 778)

444

April 4, 1967.

Robert C. Oberbillig, of Waterloo, and Hogzett & Burgett, of Oakland, for appellant and cross-appellee.

Ross, Johnson, Stuart, Tinley & Peters, of Council Bluffs, for appellee and cross-appellant.

Moore, J.—On January 25, 1965, plaintiff, Susan J. Beno, filed her petition for divorce against defendant, Thomas N. Beno. The same day he filed a petition for divorce against plaintiff. Each alleged the ground designated by section 598.8(5), Code 1962, as such inhuman treatment as to endanger the life of the spouse. Each asked custody of their son Christopher and the usual relief sought in divorce cases. Defendant was first served with an original notice. Defendant's action was consolidated for trial with that of plaintiff. The trial court found neither had established grounds for divorce and denied any relief. Plaintiff has appealed. Defendant has cross-appealed.

Plaintiff contends (1) the trial court erred in finding she failed to establish her alleged ground for divorce (2) her evidence was sufficiently corroborated (3) she should have been granted custody of Christopher together with child support and alimony and (4) reasonable attorney fees and suit money should have been allowed.

Defendant asserts (1) the trial court erred in finding he failed to establish his alleged ground for divorce and (2) the custody of Christopher should have been granted to him or his parents, Mr. and Mrs. Robert O. Beno.

I. In recent months we have written several opinions discussing in rather lengthy detail much of the law applicable to the type of case now before us. They include Britven v. Britven, 259 Iowa 650, 145 N.W.2d 450; Lehmkuhl v. Lehmkuhl, 259 Iowa 686, 145 N.W.2d 456; Elliott v. Elliott, 259 Iowa 1286, 147 N.W.2d 907; Fritz v. Fritz, 260 Iowa 409, 148 N.W.2d 392; Burlingame v. Burlingame, 260 Iowa 18, 148 N.W.2d 493. From them and the cited authorities we find these general rules of law are well established.

A party seeking divorce on ground of cruel and inhuman treatment endangering life has the burden of proof.

■ To entitle a party to a divorce under Code section 598.8 (5), it is necessary two elements be proven, (1) inhuman treatment and (2) danger to life therefrom.

Life may be endangered by impairment of health.

Danger to life is sufficient where the danger is reasonably apprehended.

■ Proof of physical violence is not always necessary. Any mistreatment which deprives a spouse of needed rest, peace of mind, and affects the nervous system so that health is undermined, may endanger life as effectively as physical violence.

■ A long-continued, regular and persistent course of fault-finding, criticism and belittling, on the part of one spouse, may amount to cruel and inhuman treatment and where there is also a persuasive showing that such conduct has affected the health, physical or mental, and to some extent has thereby endangered the life of the spouse, a sufficient cause has been made to justify a divorce.

■ To determine whether ground for divorce under the allegation of cruel and inhuman treatment exists, it is necessary to consider the entire record of the married life of the parties.

■ Our review is de novo. We give considerable weight to the fact findings of the trial court but are not bound by them.

Whether a course of conduct is such as will justify a decree of divorce on ground of cruel and inhuman treatment must be determined in each case upon its facts.

II. Plaintiff and defendant first met in November 1962 at Fairfield, Iowa, where both were attending college. They were married at Fairfield on March 23, 1963. He was then 22 and she 21 years of age. Plaintiff at time of marriage was pregnant by defendant. Their son, Christopher, was born October 19, 1963. Prior to their marriage the parties counseled with clergy of their churches. Defendant's attitude toward the marriage, however, was clearly indicated on the marriage day when his father offered the couple $200 for a honeymoon. Defendant refused to take plaintiff on a honeymoon, stating: "I don't think we really deserve a honeymoon". Several months later while showing visitors pictures he had taken in Europe prior to marriage defendant pointed out a girl in one of the pictures and stated, "that was my honeymoon". This was only one of the many persistent cruel attempts by defendant to embarrass plaintiff in the presence of others.

Defendant was the school photographer and seemed to delight in taking obscene pictures and showing them to unmarried visitors and telling them what their relationship should be. On one occasion he displayed pictures of a young female in an unnatural sex act with a male student at defendant's fraternity house. He had taken them approximately a week before Christopher's birth. On other occasions he displayed indecent pictures and with frequent foul talk intentionally embarrassed plaintiff. One of his favorite pastimes was to ridicule and compare plaintiff's bustline with other women. He frequently made nasty remarks to her.

Plaintiff was reared in a decent refined home. She regularly attended church and sang with the choir. She had not been exposed to such filth prior to her marriage. It shocked and embarrassed plaintiff and adversely affected her health.

Ernest v. Ernest, 243 Iowa 1249, 1256, 55 N.W.2d 192, 195, states: "We feel justified in giving consideration to the fact that the defendant was disposed to tell 'off color' stories in the presence of guests that were embarrassing to the plaintiff and affected

her nervous system and her health. * * * It is our conclusion that the telling of lewd and salacious stories in the presence of guests can injuriously affect the health of a person of refinement and can cause mental anguish."

III. Defendant in addition to indecent conduct and language indulged in frequent use of profanity and calling plaintiff vile names.

It will serve no useful purpose for us to relate the profane language used by defendant or to recite the vile names he called plaintiff. It was admitted by defendant and explained only as a bad habit of many years of which he was not proud.

When asked by plaintiff why he called her vile names defendant stated he did not love her and that he married her because he had to. This and defendant's other abuse became progressively worse during the marriage. We have no doubt it seriously affected plaintiff's emotional stability and was detrimental to her health to the extent it endangered her life. Dillavou v. Dillavou, 235 Iowa 634, 17 N.W.2d 393; Wilson v. Wilson, 246 Iowa 792, 68 N.W.2d 904.

IV. Defendant also physically abused plaintiff. While living in a house in Fairfield, which the evidence shows was rather inadequate, defendant neglected his studies and sat for hours watching television. Plaintiff became concerned and turned off the television. Defendant responded by yelling several vile names at her and pulled her over a coffee table. Plaintiff's arm was scratched by the coffee table. She landed on the floor. Defendant then threatened to hit her if she did not get up and she complied. She was then several months pregnant.

During Christmas vacation 1963 the parties were guests in the home of defendant's parents in Council Bluffs. Christopher was then about two months old. He had given plaintiff some trouble as he had his days and nights mixed. This required plaintiff being up often with him at night. She had not completely recovered from the childbirth.

On a Sunday morning defendant and his parents had gone to church. Plaintiff had remained home with the baby. Upon their return plaintiff, being tired, went upstairs to lie down. Soon thereafter defendant appeared and demanded she get up

and take care of the baby. Upon her inquiry defendant said nothing was wrong with the baby but he and his parents were eating breakfast. When plaintiff did not immediately arise he yanked her out of bed, called her a "filthy gutter slut" and when she slapped him he kicked her in the back knocking the wind out of her. He then threatened to hit her again if she did not get up. She got up.

Most of 1964 the parties lived in an apartment in Council Bluffs. Defendant was working in his father's department store. During an argument in the apartment defendant pulled plaintiff to the floor, sat on her and threatened to hit her but then released her. This was followed by name-calling in terms more vile than that quoted above. Her throwing a vase at him preceded a rather severe beating administered by defendant. He threw her on a couch, beat her with his hands and kicked her in the ribs. When she attempted to telephone for help, he threatened to kill her. From this affray she received a black eye, a swollen bump on her head and sore ribs.

The parties moved to Council Bluffs in February 1964 where they lived until December when defendant took the baby to his mother's home and told plaintiff she was not under any circumstances to go to his mother's home and attempt to see her baby. Separation of the parties followed. Plaintiff had been subjected also to belittling and criticism from defendant's mother.

Further details of defendant's abuse of plaintiff is unnecessary. His conduct became progressively worse during the marriage.

Prior to marriage plaintiff was a happy, healthy, normal college girl. Her normal weight was 118 pounds. Defendant's conduct caused her to be upset and emotional. During October, November and December she was taking tranquilizers and sleeping pills. They had been prescribed by her doctors. Witnesses described her as extremely nervous. In December 1964 she was tired and weak. She then weighed 105 pounds. After separation her health improved. On July 6, 1965, she had regained her health and weighed 122 pounds.

V. We have construed restoration of health and weight after a few months of separation, following failure of health and

loss of weight, as tending to establish the conduct of defendant was inhuman and endangered life. Phillips v. Phillips, 251 Iowa 1310, 1313, 104 N.W.2d 832, 833; Rasmussen v. Rasmussen, 252 Iowa 414, 421, 107 N.W.2d 114, 118.

In Bouska v. Bouska, 249 Iowa 281, 285, 86 N.W.2d 884, 886, we say: "The marked deterioration of plaintiff's health and her loss of weight during her life with the defendant, and her gain in both health and weight after she left him, are significant and furnish corroboration under the doctrine of Hines v. Hines, 192 Iowa 569, 570, 185 N.W. 91, 92, and Low v. Low, 232 Iowa 1114, 1116, 7 N.W.2d 367, 368. Failure in health and marked loss of weight during married life, unaccounted for in any other way, with improvement after separation, all as shown by testimony other than her own, may serve as corroboration of the plaintiff's evidence. We find the corroboration sufficient."

VI. The trial court did not find plaintiff's testimony was not corroborated as required by Code section 598.7 but indicated some question in this regard by reference to Baker v. Baker, 252 Iowa 1161, 110 N.W.2d 236. In Baker, plaintiff, as here, did not call treating physicians to corroborate her conclusion her nervous condition resulted from defendant's conduct. In Baker we did not hold such corroboration is required. We only hold we could not assume that if the doctors had been called they would have agreed with plaintiff's conclusion. As we point out in Britven v. Britven, 259 Iowa 650, 145 N.W.2d 450, 453, failure to call a treating doctor is simply one of the many factors to be weighed and considered in determining the right to the relief prayed. Busy doctors are not easy to get into court as witnesses particularly in domestic relations cases. Two of plaintiff's doctors lived in eastern Iowa.

Corroboration is required to prevent collusion between the parties. It is not necessary, however, that every detail of plaintiff's testimony be corroborated or that the corroboration alone sustain the decree. Defendant's testimony may corroborate that of plaintiff. Payton v. Payton, 252 Iowa 772, 776, 108 N.W. 2d 358, 360, 86 A. L. R.2d 416; Hancock v. Hancock, 257 Iowa 119, 123, 131 N.W.2d 757, 760; Arnold v. Arnold, 257 Iowa 429, 435, 133 N.W.2d 53, 57.

450

In Hand v. Hand, 257 Iowa 643, 647, 133 N.W.2d 63, 66, we say: "* * * her admissions and failure to deny are persuasive and furnish ample corroboration for the plaintiff's case."

In this case defendant admitted to others as well as on cross-examination he had struck plaintiff and used foul and profane language. He did not deny the picture taking or showing them to others in plaintiff's presence. Other witnesses related his misconduct toward plaintiff and that she became extremely nervous and emotional before the separation. Plaintiff's testimony regarding defendant's cruel and inhuman treatment and its effect on her is amply corroborated in the record.

VII. We find no evidence of cruel and inhuman treatment by plaintiff or evidence of the slightest ill effect on defendant's health. He argues plaintiff did not give sufficient care and attention to Christopher and as a result thereof he worried. Of course, she had trouble carrying out her many duties after her health was broken. This was the result of his abuse of her.

Defendant attempts to get some support for his contentions by the fact plaintiff continued after the marriage to correspond with a former male college friend in California. She had not seen the young man since several months before her marriage. His letters written after the marriage refer to her wedding pictures and his planned wedding to a friend of plaintiff.

Defendant failed to establish his alleged ground for divorce. His cross-appeal is without merit.

VIII. We now must consider the most troublesome problem —The best interest of Christopher and the orders to be made in regard to custody, visitations and support. Plaintiff cared for him to the best of her ability. Her nervous and emotional problems in the fall of 1964 brought criticism and faultfinding by defendant and his mother. Defendant took the child to his mother's home where he remained a few weeks. Plaintiff then, over the protest of defendant's mother, forcibly took the child and went to Bettendorf where she was living with her parents. Later the child was returned to defendant's mother's home on a hearing for temporary custody pending trial of the divorce case. In argument we are advised Christopher has remained there since the

decree of the trial court denying any relief to the parties and pending this appeal.

At trial time plaintiff had regained her health. Dr. Robert Dale Jones, an Omaha psychiatrist and neurologist, examined her a few days before the trial. He testified he could find no evidence of frank emotional or neurotic type of symptoms at the time of his examination. She was then working regularly at a Bettendorf department store for $1.25 per hour. She was living with her parents at Bettendorf, attending church and again singing with the choir.

Several witnesses, including her clergyman with 30 years experience in marriage counseling, expressed opinions plaintiff was a proper person to have the care and custody of her minor child. They had observed her care of him in the past.

Defendant makes little claim he should be given custody. As we understand his position he proposes custody be given to his parents where he will live. He contends plaintiff's care of Christopher was not proper and therefore she should not have custody. Defendant's mother refers to plaintiff as immature.

Defendant's mother, age 51, and his father, age 61, are no doubt conscientious well-meaning grandparents and have done their best to serve the welfare of their grandson. The record clearly indicates defendant's mother was overzealous in advising defendant in his marital affairs and the way Christopher should be reared. Defendant on cross-examination testified he had been induced by his mother to strike plaintiff. No motion to strike this testimony was made. It remains unexplained in the record.

In considering the question of a child's best interest we have said repeatedly that a mother is ordinarily best fitted to care for a child of tender years. Blundi v. Blundi, 243 Iowa 1219, 1225, 55 N.W.2d 239, 245; Stillmunkes v. Stillmunkes, 245 Iowa 1082, 1086, 65 N.W.2d 366, 369; Willey v. Willey, 253 Iowa 1294, 1301, 115 N.W.2d 833, 838; Schildgen v. Schildgen, 260 Iowa 110, 148 N.W.2d 629.

In Voy v. Voy, 241 Iowa 673, 676, 41 N.W.2d 869, 870, we say: "As an aid in determining the custody of children in a particular case courts have frequently resorted to a presumption that, save in exceptional circumstances, the mother is best fitted

to care for children of tender years. Maron v. Maron, 238 Iowa 587, 591, 592, 28 N.W.2d 17, 19, 20; Bell v. Bell, 240 Iowa 934, 939, 38 N.W.2d 658, 660."

In Vanden Heuvel v. Vanden Heuvel, 254 Iowa 1391, 1399, 121 N.W.2d 216, 220, where we gave custody of a three-year-old daughter to the mother who had had prior serious emotional problems, we say: "We are, of course, mindful of the presumption that a young child will be best advantaged by being placed in the custody of the mother. We are also aware that this presumption has been weakened somewhat in recent years, so while it may be said such a presumption is not strong and can readily be overcome by other evidence, there must be some such substantial evidence. Thus, as a general rule the court would be right, save in exceptional circumstances, in holding the mother best fitted to care for her child of tender years."

We find no exceptional circumstances in this record to justify taking custody of Christopher from his mother. Plaintiff should be given custody of Christopher with reasonable visitation rights to defendant. Defendant should be allowed to take Christopher over one weekend each month from Friday evening until Sunday afternoon and for a two-week period during July or August of each year. If the parties are unable to agree as to the time of these visitations, the trial court should make specific provisions.

At trial time defendant was working in his father's department store in Council Bluffs. He was being given management training. His take-home pay was $350 per month. He was also furnished an automobile. He was living at his parents' home. Plaintiff had been put to considerable medical expense and was earning only $1.25 per hour.

Defendant should be required to pay child support of $75 per month and a lump sum of $1200 as alimony, payable $50 per month. We are advised the parties have made a division of the small amount of personal property owned by them and therefore make no order in regard thereto.

Plaintiff's counsel have been allowed only a temporary attorney fee of $150. Much time and effort have been spent in the trial and presentation of this appeal. Plaintiff is without funds

or the ability to earn money with which to pay her attorneys for necessary services rendered. Defendant should be required to pay an additional $1000 to plaintiff's attorneys for services rendered.

Costs of this appeal and in the trial court are to be taxed to defendant.—Reversed and remanded on plaintiff's appeal; affirmed on defendant's cross-appeal.

All JUSTICES concur except THORNTON, J., not sitting.