VIRGINIA YOUNG, appellee, v. DR. ROBERT T. YOUNG, appellant.

No. 52467.

(Reported in 151 N.W.2d 340)

June 6, 1967.

Wilson, Stamatelos & Glenn, of West Des Moines, for appellant.

Connolly, O'Malley & Conley, of Des Moines, for appellee.

BECKER, J.—Defendant appeals from trial court decree granting plaintiff-wife a divorce, fixing alimony and ordering child support. The single ground for appeal is that the evidence fails to establish that defendant's alleged mistreatment endangered her life.

The parties were married July 6, 1952. Each had been previously married. Plaintiff's former marriage had terminated in a divorce. She had one child, James R. Hultman, who lived with the parties after their marriage. Defendant's marriage terminated in annulment some six or seven years after marriage. His spouse was in an institution at the time of that annulment. He had custody of the two children of that marriage; Delores, age 7, and Robert, Jr., age 5, in 1952. These two children also lived with plaintiff and defendant after marriage. There were two children born of this marriage; Fred Douglas, age 9, and Debra K., age 5, at the time of the trial in March 1966. Defendant is a dentist by profession.

This is the second divorce action between the parties. The first commenced in August 1963 and resulted in a reconciliation.

I. Our statute provides that a divorce may be granted against the husband "When he is guilty of such inhuman treatment as to endanger the life of his wife." Code, 1966, section 598.8(5). Cases decided by this court applying that section are myriad. The rules are well established. Application causes the difficulty. Just what gives rise to a finding of cruel and inhuman treatment cannot be precisely stated. We note once again that each case must be determined on its own facts. Record v. Record, 244 Iowa 743, 57 N.W.2d 911.

"Incompatibility or mere family quarrels or arguments even when accompanied by minor physical applications are not grounds for divorce under the statute." Elliott v. Elliott, 259 Iowa 1286, 1290, 147 N.W.2d 907, 909.

But physical abuse is not necessary to a finding of cruel and inhuman treatment if a long continued course of faultfinding, criticism and belittling is shown to amount to cruel and inhuman treatment. In such cases if there is also a finding that such treatment affected the health, physical and mental, and to some extent the life of a spouse, a divorce may be granted on grounds of cruel and inhuman treatment. Burlingame v. Burlingame, 260 Iowa 18, 148 N.W.2d 493.

II. Additional repetition of the various rules relative to adjudication of cases of this kind would serve no useful purpose. We turn to the facts.

Plaintiff testified that the parties have been having trouble ever since the second child was born, some seven years before trial. She says that initially she loved defendant and tried to be a good wife and mother but that her husband's constant criticism about her housekeeping, handling of the children, cooking and general attitude turned her against him. Their sex life was a source of argument, often in the presence of the children.

When plaintiff sought a divorce the first time she attached some $20,000 of bank accounts in the parties' name. The parties reconciled, each agreeing to try to work out their difficulties. Defendant promptly transferred practically all of his cash assets outside of the state into his own name alone, without telling plaintiff of these moves. Since that time plaintiff contends that defendant's actions have become worse rather than better.

On their tenth or eleventh wedding anniversary, which would be before the first divorce action was started, defendant composed his own anniversary sentiments in a card he gave his wife. A few lines are quoted as indication of defendant's attitude and treatment of plaintiff. "It's a Hell of a life with a second-hand wife." The verse continues in that vein until it ends on the following note: "Another ten years—How can I stand it! As for this marriage—I've had it!"

Although she does not rely primarily on physical beating as the basis for her complaint, plaintiff did testify to being knocked about at least once, to defendant's action of throwing a coffee cup against the wall in a fit of anger and that she was afraid of her husband.

The sex life of the parties also came in for reasonably full and frank exposure. It seems clear that failure to achieve an adequate sexual adjustment is one of the root causes of this couple's troubles. Defendant sent books on sex to his wife. The method of delivery was to wrap them in paper and have the children deliver them. Passages in these books were marked. Taken with the anniversary letter, the marked passages in many places could only be taken as derisive and cruelly sarcastic. Plaintiff also spoke of defendant's demand for unnatural sexual acts from her and her aversion to these demands. It was defendant's actions in this regard that finally directly precipitated this second divorce action.

There were other incidents related by plaintiff and her witnesses, including a threat by defendant to kill himself, that increased the tension and emotional strain. On cross-examination defendant told of a trip to a psychiatric hospital to find out if he could file a psychiatric case against his wife and being told: "You can't file against her. It is out of the question." We conclude that plaintiff's fears are shown to have had some substance.

Plaintiff also testified to being under a doctor's care and the medication prescribed. Both parties testify to each consulting a psychiatrist but plaintiff said that defendant refused to continue to seek help in this direction. This is corroborated to some degree by defendant's own statements.

Treatment and training of the children was also a source of great friction. This admittedly difficult problem with full relationship, half relationship and step relationship between the children was not met.

Plaintiff's summation follows: "Since we went back together there has been nothing I was able to do to satisfy Dr. Young. He has just belittled me and I am no good and his children have told me that too, and I feel that is the way he and his children feel. This has affected my appetite and my ability to sleep and

I am nervous and ill and there is just no future with him at all. I feel this way and I think there is no other alternative but to get a divorce. It is not what I want but there is no alternative— I can't live this way."

We think the record justified the summation. We conclude that plaintiff's emotional stability was affected and her life endangered within the meaning of section 598.8(5). Beno v. Beno, 260 Iowa 442, 149 N.W.2d 778; Dillavou v. Dillavou, 235 Iowa 634, 17 N.W.2d 393; Wilson v. Wilson, 246 Iowa 792, 68 N.W. 2d 904.

III. Defendant does not complain of lack of corroboration but does point out that neither plaintiff nor any of her witnesses testified directly that the treatment endangered her life. Expressions of such opinions are common in most divorce cases but they are not essential to the result. The conclusion that life is (or is not) endangered is finally drawn by the court based on the factual as well as opinion evidence available to it. We have recently held that medical testimony is not essential to a conclusion that life is endangered. Britven v. Britven, 259 Iowa 650, 145 N.W.2d 450, 453; Beno v. Beno, supra. So also, lay opinion testimony is unnecessary if the facts upon which such an opinion would be based are available to the court in the record. The presence or absence of medical or lay opinion evidence is simply another factor to be weighed by the court in reaching its judgment.

Plaintiff's son as a corroborating witness did express the opinion that continuation of the marriage would endanger plaintiff's health. Another witness testified that plaintiff would vomit when upsetting things happened to her and her marital problems very definitely affected her health. In view of the wealth of other factual evidence a final expression of opinion in regard to danger to life is not essential to make a case here.

IV. Neither party complains of the custodial or financial arrangements decreed by the court. In this de novo appeal we have carefully considered the entire record and have concluded that the trial court's disposition of these matters is equitable. Attorney fees, in the sum of $600, and printing costs actually incurred by the plaintiff are hereby allowed in favor of plaintiff

and against defendant and taxed as part of the costs of this action.  Costs are assessed against defendant.—Affirmed.

All JUSTICES concur.