**Nancy Alice BLASCO, Appellee,**

**v.**

**Rudolph T. BLASCO, Appellant.**

**No. 52761.**

Supreme Court of Iowa.

Jan. 9, 1968.

Stewart, Miller, Wimer, Brennan & Joyce, Des Moines, for appellant.

Bump, Jordan & Holmes, Des Moines, for appellee.

STUART, Justice.

Mrs. Blasco, being dissatisfied with her lot in married life, brought this action for divorce. It was granted by the trial court. The result reached there was probably a practical one. However, as our opinions become precedents, we are not as free as the trial court to resolve the individual marital disputes. The rules of law applicable to this type of case have been set out fully in

Beno v. Beno, Iowa, 149 N.W.2d 778, 780, and Sigler v. Sigler, Iowa, 150 N.W.2d 287, 288. It would serve no useful purpose to repeat them here.

The parties to this action were married in 1954 when plaintiff was 19 and defendant was 23. They have three children, a boy 11 and twin girls, 8. The husband has changed jobs many times during the marriage for various reasons, including his wife's request. There was one period of unemployment of several months duration. They had problems meeting their basic financial needs. Plaintiff's health was poor, particularly after the birth of the twins, and these medical expenses coupled with those incurred for medication to control her epileptic condition added to the financial problems. They did not have a car after 1959 until defendant's present job made transportation necessary. His family frequently came to their aid. Plaintiff did not work after the marriage except for a few weeks after they separated.

In June 1959, plaintiff went to California with the children and stayed with relatives until November of the same year. She returned to re-establish the home. Her half-brother came to Iowa from California about the same time and except for the first few months has lived with these parties. He paid rent and worked around the home and furnished transportation for plaintiff and her children. In spite of the financial help the situation was not designed to promote marital harmony. When plaintiff moved from the home the parties were purchasing, her half-brother moved too and has continued to live with her and the children. She does not want him to leave because of the help he is giving her.

■ We have searched the record for evidence of cruel and inhuman treatment as we have interpreted it and fail to find enough to justify a decree of divorce. There are no charges of abusive, threatening, insulting, nagging or demeaning language or conduct on the part of defendant toward plaintiff. She does not cite a single instance of the slightest physical abuse. Plaintiff does not include drunkenness, philandering, or self-indulgence among defendant's faults.

Plaintiff's own analysis of their marital problems points to financial insecurity and lack of communication as the main sources of irritation. These coupled with claimed inconsistent disciplining of the children, failing to furnish transportation and turning to his family for advice rather than plaintiff are the sum total of her complaints. While not conducive to a happy home, these difficulties have not yet been held grounds for divorce. It is not suggested the sources of conflict were instigated maliciously by defendant to harass plaintiff.

■ Only one instance in the record takes on the color of cruel and inhuman treatment. During the last trial separation when plaintiff, her children and her half-brother were living in the family home and defendant was living with his parents, it became necessary for plaintiff to go into a hospital for a few days. Considering the children his responsibility during this period, defendant stayed in the house at night. He visited plaintiff in the hospital every evening and told her what he was doing. This was disturbing to her and when she came home from the hospital at 1:00 p. m. on a Saturday, she called him at work. She was very "mad" and told him, screaming and crying, to come get his clothes or she would throw them out in the yard.

He finished his day's work and, being disturbed himself, consulted the county attorney's office rather than going after his clothes. A member of the staff prepared an information charging her with mental illness for his signature. She was picked up at 11:00 that night and taken to Broad-

lawn's Hospital where she remained until she was examined and released Monday morning. Defendant appears to have taken this action in good faith upon the advice of counsel for what he thought to be her best interest. Such action, though misguided, would not under these circumstances constitute grounds for divorce as cruel and inhuman treatment.

There is probably no chance the family relationship will be re-established, but we cannot approve a divorce granted upon the wife's complaints here.

Reversed.

All Justices concur except RAWLINGS and BECKER, JJ., who dissent.