Carole A. O'KEEFE, Appellant,

v.

Duane L. O'KEEFE, Appellee.

No. 53129.

Supreme Court of Iowa.

Nov. 12, 1968.

Stratton R. Eller, Des Moines, for appellant.

Dan Stamatelos, of Stamatelos & Glenn, West Des Moines, for appellee.

SNELL, Justice.

Plaintiff has appealed from the trial court's dismissal of her petition for divorce.

Again we are faced with the distressing problem of deciding when conduct clearly reprehensible and subject to criticism is "such inhuman treatment as to endanger the life of his wife," required by section 598.8(5), Code of Iowa.

"Cases decided by this court applying that section are myriad. The rules are well established. Application causes the difficulty. Just what gives rise to a finding of cruel and inhuman treatment cannot be

precisely stated. We note once again that each case must be determined on its own facts." Young v. Young, Iowa, 151 N.W. 2d 340, 341.

■ A strict and literal application of the statute would make it almost impossible to obtain a divorce except upon proof of chronic alcoholism or a major felony. Such an application has not been followed. We have repeatedly held that danger to life need not be imminent. We recently said:

"And life may be endangered by conduct of one spouse which impairs health of the other. If the danger is such as to be reasonably apprehended, then danger to life is disclosed." Pardie v. Pardie, Iowa, 158 N.W.2d 641, 643.

In the case before us the trial court found an unhappy marriage, some fault on both sides, but the more serious fault on the part of defendant and no hope of a successful marriage in the light of defendant's habits. The court then found that the situation was not such as to put plaintiff's life in danger.

■ Our review is de novo and we give weight to the trial court's findings of fact but are not bound by them. Rule 344(f), par. 7, Rules of Civil Procedure. Here, however, there is no factual dispute in the evidence.

The case before us is somewhat unusual in that the evidence for plaintiff is without dispute in the record. Defendant offered no testimony. The court's ruling was a strict application of the statute. We think under the record before us plaintiff's evidence, in the absence of any contradiction, is sufficient.

The trial court during the trial indicated doubt as to the sufficiency of plaintiff's evidence. When plaintiff rested defendant moved for dismissal and the court sustained the motion. We, therefore, have no evidence for defendant. Defendant's brief and argument contains no statement of facts.

Plaintiff's evidence at the trial and her statement of facts on appeal is supported by the record and stands uncontradicted.

■ In considering the propriety of defendant's motion we view the evidence in the light most favorable to plaintiff. Citations are unnecessary. Rule 344(f), par. 2, Rules of Civil Procedure.

Briefly stated the record shows plaintiff and defendant were married April 25, 1964 after a brief acquaintance and briefer engagement. They have one child, a daughter, born July 13, 1967. Prior to and during part of the time since the marriage plaintiff has been employed by Northwestern Bell Telephone Company with gross earnings of about $400 per month. She accumulated and paid for 26 shares of A. T. & T. stock, a car and a few other savings and items of personal property. Most of the savings have been spent and the stock has been pledged as collateral for a bank loan to plaintiff and defendant.

Four times while defendant was driving their car he was involved in an accident. On three of the occasions he had been drinking. After the second accident their insurance was cancelled. Much of the money from the bank loan was used to settle claims arising from subsequent accidents.

Defendant is a dry wall construction worker with earnings from $400 to $750 per month gross.

Except for brief periods of tranquillity their married life has been stormy. Plaintiff commenced a divorce action in July 1966. The parties were reconciled and the action was dismissed.

We quote excerpts from plaintiff's uncontradicted testimony as to physical abuse:

"[He] stomped me with his foot in my back, hips and leg * * * grabbed me around the neck, pinching both sides of my throat, causing bruises, black and blue marks and little blood blisters. Slapped me and as a result my lips were cut. * * *

chasing me back to the bedroom or bathroom and hitting me in the back or head. * * * he reached over and pounded me on my head."

As to mental abuse she testified:

"He did not include me in his drinking. * * * he would come home after the bars closed at 2:30. I didn't wait up for him, but I couldn't sleep. * * * Worst part of it was the money he spent plus he would not let me go with him. * * * Would leave for work Friday morning and wouldn't show up until 2:30 Saturday morning."

Defendant's drinking habits undoubtedly contributed heavily to the breakup of this marriage. As a spouse defendant was not a success. However, we do not hold that failure to take a wife along on drinking parties is in itself ground for divorce. Plaintiff testified that she did not drink at home. If she went out she had one or at the most two beers.

As to the result of defendant's actions, plaintiff testified:

"[I] just couldn't count on his coming home. You can't imagine the frustration I felt in not knowing whether he was going to come home in one piece. * * * Quite nervous—I went from a bright person to somebody who was moody * * * afraid to leave him. * * * I was treated as a child. I was not given any respect whatsoever. * * * It affected my work for the job. I had no confidence or reassurance at home." There was testimony that "she was bruised and hurt and physically and mentally a wreck; she was unhappy * * starting to withdraw * * * full of fear * * * afraid of him."

Plaintiff was understandably unhappy with the result of defendant's drinking and inattention to household chores. She testified:

"Sometimes on Saturday night he'd be nauseated so I would get a newspaper and bucket and put it by the side of the bed because I didn't want to clean up the mess. * * *

"During the week after he had been drinking we argued about more things than his drinking. The fact that he wouldn't fix the sewage line. My plumbing was messed up for five months and every time I did my dishes I had to keep a pan under the sink or have it over the floor. The roof leaked; he would not fix that. The grass would go to seed before he would mow it. This summer he mowed it once, my father and his nephew mowed once. There was absolutely no interest in the home."

The only attack on plaintiff's testimony was by cross-examination. This appears:

"On the night of the 'foot stomping' incident, as he took all of the money out of my pocketbook and was going out the door, I threw a can of Aero Shave at him, which hit him in the forehead causing a cut that bled. He ran to the bathroom, knocked the door down and started his foot stomping after I hit him with the shaving can. * *

"I have thrown pillows at him, hit him with my hand and that aerosol can incident. I know when I lose my temper I do talk a lot. He was trying to shut me up. * * *

"I think Duane was taken down to the jail house on one occasion and had to appear before the judge the next morning and pay a fine. It was not a traffic cause—he was with a friend and the policeman arrested the friend for running a red light and Duane for intoxication, and had to pay something like $20. The time he hit four cars from behind he was arrested for reckless driving; paid $75 fine, and came home in a cab at 4:00 in the morning. Another time in West Des Moines he pulled out, the car hit him and he ran. The next day he turned himself in and I went and got the paycheck and paid the $50 to get him out. The arrests I refer to are traffic charges."

From the redirect examination this appears:

"What precipitated the aerosol can incident was that Duane came home at 10:00 p. m. acting like Mr. Rooster, with a friend, announced that he was going to take this

friend home, which was quite odd because we lived so far out in the country for him to have to come back home. He had been drinking. I became angry; went out to the car and drove off. In the car I found a six-pack of beer, two cans of which were open, which I threw out of the car. I came back 15 minutes later, went into the house and he was still throwing things around, slapping perfume all over himself and getting all dressed up—to take this friend home. He then opened my purse, took all my money out, acting real smart, laughing, talking and showing off to his friend. That is when I picked up the can and threw it. He retaliated by the foot stomping incident. It was right after that he was involved in the second car accident—a sideswipe on Fleur."

Plaintiff had not had medical treatment for her troubles.

Her corroboration was by her mother. Plaintiff's mother testified as to defendant's rudeness, lack of consideration, habits and drinking. She told of plaintiff's bruises, marks on her throat, forehead and arm. She described plaintiff's personality and mental deterioration. "When she came home in December, she was at the point of no return as far as her marriage was concerned, and she was physically and mentally a wreck."

Plaintiff is still highly nervous but her state of mind has improved.

I. This marriage has obviously failed. Dissonance has prevailed. Domestic harmony has been rare. Reconciliation and rehabilitation of the marriage have been tried and failed. Defendant has inflicted on his wife physical and mental abuse. Plaintiff admits some shortcomings but there is nothing before us to indicate that plaintiff has deserved the treatment she has received. Just how much mistreatment can be endured and still live we do not know, but here the evidence is that continuation would be disastrous to plaintiff.

II. We have held that medical testimony is not essential to a conclusion that life is endangered. Young v. Young, supra, Britven v. Britven, 259 Iowa 650, 655, 145 N.W.2d 450.

III. We have had so many and recent divorce cases before us that exhaustive review thereof would serve no useful purpose. In Beno v. Beno, Iowa, 149 N.W.2d 778, 780, we said:

"We find these general rules of law are well established.

"A party seeking divorce on ground of cruel and inhuman treatment endangering life has the burden of proof.

"To entitle a party to a divorce under Code section 598.8(5), it is necessary two elements be proven, (1) inhuman treatment and (2) danger to life therefrom.

"Life may be endangered by impairment of health.

"Danger to life is sufficient where the danger is reasonably apprehended.

"Proof of physical violence is not always necessary. Any mistreatment which deprives a spouse of needed rest, peace of mind, and affects the nervous system so that health is undermined, may endanger life as effectively as physical violence."

See cases cited therein.

In the case before us there is evidence meeting these requirements and it stands uncontradicted.

Plaintiff appellant is entitled to a divorce.

IV. Plaintiff and defendant are the parents of an infant daughter, Julie, born July 13, 1967. There is nothing to indicate plaintiff is not a good mother. She seeks custody. "In considering the question of a child's best interest we have said repeatedly that a mother is ordinarily best fitted to care for a child of tender years." Beno v. Beno, supra, loc. cit. 783.

V. Plaintiff sought attorney fees, child support, alimony, title to her personal property, relief from joint indebtedness and general equitable relief.

The parties' earning capacities, their assets and obligations were disclosed in the trial below.

The files and record of subsequent hearings in our court indicate that defendant has been indifferent and derelict in complying with our interlocutory orders.

As noted, supra, plaintiff had purchased 26 shares of A. T. & T. stock. This stock had been pledged to Iowa Des Moines National Bank as security for a loan. Plaintiff's petition asked that she have title to the stock subject to the bank indebtedness.

Plaintiff and defendant were purchasing a trailer home in which they were residing. Plaintiff's petition asked that defendant have title thereto subject to the encumbrance thereon and that plaintiff be held harmless thereform. The encumbrance was held by Telco Credit Union, an affiliate of Northwestern Bell Telephone Company, by whom plaintiff is employed.

While this action was pending below the parties agreed that defendant should pay $25 per week child support, temporary attorney fees and pay and keep current the obligations to Telco Credit Union and Iowa Des Moines National Bank.

On March 19, 1968 after application, notice and hearing in our court it was ordered that defendant pay plaintiff $25 per week for child support and keep current the obligations to Telco Credit Union and Iowa Des Moines National Bank.

Applications and reports on file herein show that the payments to the credit union and bank were not kept current.

Defendant was authorized to sell the trailer home but did nothing. The trailer home has been repossessed, sold and the proceeds credited to the loan. A deficiency of $1,063.64 remains.

The obligation to the bank was not kept current. Repossession and sale of the collateral was threatened and imminent.

To protect the equities therein, plaintiff, with the approval of this court by order on September 10, 1968, has refinanced the obligations through a loan of $3,015.08 from Telco Credit Union. Of this total $1,063.64 represents the deficiency on the loan defendant had agreed and had been directed to pay.

VI. We conclude that plaintiff is entitled to an absolute divorce, judgment against defendant for the indebtedness of defendant she has been obliged to assume, custody of the minor daughter, child support and attorney fees.

Plaintiff's second amendment to petition and her brief and argument on appeal asks for possession of 40 separate items of personal and household equipment. The items are not controverted.

VII. The case is reversed and remanded to the district court for the entry of a decree granting plaintiff an absolute divorce from defendant, custody of the minor child, Julie, with suitable visitation rights for defendant, child support of $25 per week, possession of the personal property set forth in plaintiff's second amendment to petition, title to 1965 Chevrolet automobile and 26 shares of A. T. & T. stock subject to the indebtedness thereon, judgment against defendant in the sum of $1,063.64 and attorney fees for plaintiff's attorney in the sum of $500, in addition to such sum as has been heretofore awarded.

Reversed and remanded.

GARFIELD, C. J., and LARSON, RAWLINGS, and BECKER, JJ., concur.

MOORE, STUART, MASON and Le-GRAND, JJ., dissent.

MOORE, Justice (dissenting).

I dissent.

The entire record consists of the testimony of plaintiff and her mother.

The trial court after hearing plaintiff's testimony in chief and on cross-examination stated: "I think this is about the time for adjournment. I think before adjourning here and the parties, too, that the court doesn't feel this is, so far at any rate, sufficient evidence to warrant a decree of divorce in this case, under the law in this State. And I take it the plaintiff here has given most of the evidence over the troubles of this marriage, she being the wife and the plaintiff in the case; and the corroborating witness, I suppose, would add some corroboration, but the law requires such as to endanger the life or the health. That's the only allegation here. If there were an allegation of drunkenness there isn't enough evidence to establish that. Now, unless there is considerable more testimony than this the court is going to have no alternative except dismiss this petition when the evidence terminates tomorrow. I think I just as well advise you to that effect here. Of course, I am not going to make up my mind until the evidence is finished, but I just want you to know at this time that I don't believe this meets the burden the plaintiff has at this time."

Plaintiff's testimony as summarized in the record includes: "On the night of the 'foot stomping' incident, as he took all the money out of my pocketbook and was going out the door, I threw a can of Aero Shave at him, which hit him in the forehead causing a cut that bled. He ran to the bathroom, knocked the door down and started his foot stomping after I hit him with the shaving can.

"Q. Does he still have the scar from that incident? A. I don't know.

"Q. The last time you saw him did he have it? A. I think so, yes.

"The incident with the shaving cream can was what precipitated the foot stomping incident."

There is no other evidence in the record the "foot stomping" incident ever happened. Plaintiff's mother testified she had seen marks and bruises on plaintiff's neck. but did not testify regarding any physical abuse by defendant.

After stating she experienced some frustration, plaintiff testified:

"Q. How did this endanger your life or affect your health? A. Well, it was mentally very depressing.

"Q. Did you lose weight? A. No. * * *

"Q. Did you ever consult a doctor? A. No. * * *

"I bowled one night a week until April 1967 when the league was over. I paint occasionally, and during last 2 or 3 months we lived together I began singing in the church choir which required a 2-hour rehearsal one night a week. I did not miss any rehearsals.

"I was able to perform all my housework and cooking. There was not anything abnormal or unusual about my activities during the time I lived with my husband."

After testifying plaintiff was physically and mentally a wreck, plaintiff's mother explained by stating: "Comparing her physical and mental condition: before marriage she was outgoing, happy and liked to do things. In July she still had some of those traits, only she was unhappy. She was starting to withdraw. In December when she came to me she had 'had it'. Mentally, she was full of fear, afraid of him. Everytime the doorbell rang, she jumped a foot. Everytime she heard a noise outside she was afraid."

A nervous and upset condition does not meet the requirement of danger to life from inhuman treatment under Code section 598.8(5). Many spouses find themselves nervous and upset because of unhappy incidents which occur during mar-

riage but this does not meet the requirements of the statute.

Code section 598.7 provides: "Corroboration of plaintiff. No divorce shall be granted on the testimony of the plaintiff alone."

Plaintiff's testimony of any abuse by defendant is uncorroborated.

Rule 344(f), par. 7 provides: "In equity cases, especially when considering the credibility of witnesses, the court gives weight to the fact findings of the trial court; but is not bound by them."

Here the trial court observed the two witnesses and considered their credibility. His findings of fact should be given weight which apparently the majority fails to do.

I would affirm the judgment and decree of the trial court.

STUART, MASON and LeGRAND, JJ., join in this dissent.