PEARLIE BULLOCKS, appellant, v. O'DELL BULLOCKS, appellee.

No. 52159.

SEPTEMBER 20, 1966.

Henry T. McKnight, of Des Moines, for appellant.

Harlan M. Hockett, of Des Moines, for appellee.

BECKER, J.—In this action plaintiff-wife charges defendant with cruel and inhuman treatment, adultery and desertion. Defendant-husband had cross-petitioned on grounds of adultery and cruel and inhuman treatment. The trial court resolved the issues in favor of defendant cross-petitioner, granting him a divorce on the ground of adultery. There are no children by the marriage. No alimony or support money was awarded. The personal property in the possession of each of the parties was allowed to remain the property of the possessor. Title to two parcels of real estate was quieted in defendant. Title to one such parcel was quieted in plaintiff. All parcels are vacant lots in Des Moines.

This couple was married December 8, 1934. They have both lived in Des Moines the past 18 years. They separated in 1958 or 1959, and have not lived together since. The parties agree that they separated after a domestic quarrel, but disagree as to the facts concerning the quarrel itself. Plaintiff contends that defendant came home drunk and jumped on her; that she called the police who advised her husband to leave to avoid further trouble. Defendant contends that he was at home doing some electrical wiring with his shirt off. His wife was drunk. They had an argument about a straw hat Mrs. Bullocks wanted him to throw away. She was ironing clothes at the time of the argument. She called him names and burned him with the hot iron at that time.

498

Following the separation, for whatever cause, plaintiff contends that defendant lived openly and notoriously with one Dorothy Morris. Defendant's testimony is that Dorothy Morris is the daughter of the owner of the rooming house. at which defendant stays. He admits having been to the Elks Club with her, but that is the full extent of his admissions. No effort was made to prove the essential elements of cruel and inhuman treatment or desertion as grounds for divorce.

In finding against plaintiff on her petition for separate maintenance, the court stated that her case was uncorroborated, and further that plaintiff's testimony was difficult to believe in view of her change in testimony when confronted with facts she had previously denied.

█ "In matters of this nature, so much depends upon the credibility of the witnesses and their attitude, appearance and demeanor upon the witness stand that we give considerable weight to the decision of the trial court who had the opportunity to observe them testify." Cimijotti v. Cimijotti, 255 Iowa 77, 79, 121 N.W.2d 537. "In equity cases, especially when considering the credibility of witnesses, the court gives weight to the fact findings of the trial court; but is not bound by them." Iowa Rules of Civil Procedure 344(f)7.

I. Plaintiff's first proposition is that the court's finding of facts and conclusions of law are contrary to the evidence and to law. This general statement is made as a basis for the second proposition that the court erred in dismissing plaintiff's petition, but this proposition was never actually argued in the body of plaintiff's brief. Nevertheless, we will consider it.

██ The record substantiates the trial court's reluctance to believe plaintiff's testimony. However, the clearly fatal defect in plaintiff's case is lack of corroboration. Plaintiff called defendant as a witness and testified herself. She offered no other evidence. In the absence of collusion, we may look to the spouse's testimony for corroboration. Cimijotti v. Cimijotti, supra, and Arnold v. Arnold, 257 Iowa 429, 133 N.W.2d 53. But defendant's evidence, even when given the most favorable interpretation required for plaintiff's help, is insufficient.

A review of the record establishes that (1) at no time (except in the pleadings) did plaintiff actually accuse defendant

of adultery, (2) at no time did defendant admit any acts that would indicate adulterous relationship, (3) the acts complained of were not shown to be cruel or inhuman so as to affect plaintiff's life and health, and (4) no effort was made to prove the essential elements of desertion as a ground for divorce. Plaintiff's action was properly dismissed.

II. Plaintiff's proposition that the court's action is contrary to the evidence and contrary to law is also used as an attack on the court's finding that defendant proved adultery on the part of plaintiff. We, therefore, briefly review defendant's case. The testimony of defendant himself will not be repeated as it is unnecessary for the finding of the trial court or of this court. In addition to his own testimony, defendant produced two bartender witnesses from different establishments in Des Moines who related specific actions on the part of plaintiff with men other than her husband in the bars at which they worked. It is unnecessary to enliven this recitation with the details of their testimony. Suffice to say a rational interpretation of such evidence indicates a predisposition on the part of plaintiff for extramarital adventures with members of the opposite sex. In addition to this evidence, defendant produced two men who testified that after drinking in various bars with plaintiff, they had sexual relations with her.

The gist of plaintiff's complaint is that the courts ought not grant a divorce on the uncorroborated testimony of two paramours. Plaintiff argues that, since the claimed paramours were necessarily participants, corroboration should be required before their story is believed. No authority is cited for such a proposition. Plaintiff acknowledges that adultery is seldom susceptible to direct proof and thus proper circumstantial evidence may be sufficient. This does not justify the conclusion that direct evidence by a corespondent to the fact of adultery cannot be accepted without additional corroborative evidence. While we have said that adultery is seldom susceptible to direct proof, we must now apparently add that, where direct proof is available, it is sufficient if believed.

The trial court believed such proof. On the record we agree. Other evidence detailing plaintiff's predilections leads

us to the conclusion that the trial court reached the only rational conclusion available to it.

We have considered Inskeep v. Inskeep, 5 (Clarke) Iowa 204; Matheny v. Matheny, 191 Iowa 337, 182 N.W. 375; Crilley v. Crilley, 228 Iowa 422, 292 N.W. 67, and other cases cited by plaintiff. All are factually distinguishable or, more often, stand for propositions that give no help to plaintiff's case.

III. Plaintiff seeks the allowance of attorney fees in connection with this appeal. "There is little doubt that in a proper case we may allow a wife attorney fees for services upon appeal from a divorce decree, especially where the husband appeals, even though she is not entirely successful in the ultimate decision. If this were not the rule the wife's rights might not be adequately protected." Andreesen v. Andreesen, 252 Iowa 1152, 1160, 110 N.W.2d 275; Arnold v. Arnold, 258 Iowa 850, 860, 140 N.W.2d 874, 880.

The record leaves much to be desired as to plaintiff's earning capacity. However, it is shown that she is an amputee, having lost her right leg in an unfortunate accident as a child. But the record also shows that she is not without financial resources. While we have no doubt of the sincerity of plaintiff's counsel in prosecuting this appeal, on the whole record we find that attorney fees should not be allowed. The costs in connection with the appeal including transcript and printing costs shall be assessed to and paid by defendant.—Affirmed.

All JUSTICES concur.