CAROL L. JENSEN, appellant, v. EDWIN R. JENSEN, appellee.

No. 52007.

(Reported in 152 N.W.2d 829)

September 19, 1967.

James W. Hall and Robert D. Hall, both of Des Moines, for appellant.

Harold G. DeKay, of Atlantic, for appellee.

Becker, J.—This case was started by defendant Edwin R. Jensen filing suit for divorce. After his wife answered and cross-petitioned, Mr. Jensen dismissed his action. The wife was then designated as plaintiff and the husband as defendant on the basis of the cross-petition and answer thereto.

Defendant, then 19, and plaintiff, 18, were married September 16, 1956. Four children were born of the marriage. Their ages ranged from 2 years to 7 years at time of trial.

Defendant has been a carpenter all his married life. Plaintiff worked as a secretary the first year of married life but stopped because of pregnancy. She supplemented their income to some extent by giving piano lessons. Defendant's income varied from $4500 to $5900 per annum. He added to the family's net worth by first repairing old houses the parties bought and later building a new home.

The first overt incident portending the present litigation occurred in 1960. At that time plaintiff left defendant but the couple were reconciled within a few days. Plaintiff's second departure occurred in the fall of 1964. The parties' stories of

marital discord leading to the second separation are widely divergent. We shall note them as briefly as possible.

Plaintiff contends defendant has an ungovernable temper, curses and swears at her very frequently, has several times physically abused her by striking her, choking her, throwing her to the floor. She also related threats made by defendant. Detailed incidents of such treatment were provided. One such incident occurred in August 1964 and occasioned the latest separation. Plaintiff returned from a short vacation with some friends. She asked defendant for grocery money. After she had followed Mr. Jensen to the new home where he was working and asked for money a second time, defendant cursed her and called her vile names in front of the children. She took the children to Des Moines for about a month but returned to Atlantic and occupied the new house. By this time defendant had started this divorce proceeding. In November defendant visited her there late at night. She had the door secured by a chain. Defendant broke the door open, the chain pulled the door casing off the wall. At that time plaintiff claims defendant jerked her around, twisted her arms, threw her to the floor and called her a slut and other names. He went out to the car, obtained a hammer and replaced the door casing, then left.

Plaintiff detailed other incidents of violence and spoke generally of defendant's cursing her and her fear of him, her extreme nervous condition and consultation with her physician.

One other incident will be particularly noted. On March 13, 1965, while plaintiff was living in Des Moines, defendant came to pick up the children for a visit. The couple got into an argument, plaintiff accuses defendant of tearing the telephone book from her hand when she went to call the police. He then grabbed her and started to choke her, threw her down and banged her head against the floor. He finally stopped and left. She called the police.

The police officer testified that when he arrived he saw red marks on plaintiff's throat but nothing of the direct action. Testimony by Mrs. Northup, plaintiff's sister, was in the same vein. At a contempt hearing before a different judge Jo Beth Jensen, the couple's oldest child, age seven at the time of trial,

testified in detail as to this March 13th incident, this testimony was in chambers with only the judge, court reporter and attorneys present. The child's account fully corroborated her mother.

Enough has been said to outline the main burden of plaintiff's case. Defendant categorically denies nearly all of the damaging testimony above noted. He states he struck his wife only once in November when he spanked her. His version of the March 13th incident is that Mrs. Jensen choked herself and beat her own head against the floor.

As to breaking down the door, he states he did not push hard but the door casing came out by itself. Defendant indicates most of the trouble occurred over money. He states firmly he did not curse at his wife at anytime. He is corroborated in a measure by a married couple who were friends of the parties and said they got along fairly well.

Another area of testimony should be mentioned. Plaintiff told of the parties having consulted a marriage counselor, Doctor Sjogren, a psychiatrist. She said they visited the doctor four times but her husband then refused to go anymore and stated he wanted to get the divorce, and get it over with. This testimony is not referred to in defendant's evidence.

I. The foregoing brief résumé indicates the problem presented to the trial court and to us. If the testimony of plaintiff is to be accepted there is little question that sufficient evidence of cruel and inhuman treatment to require a divorce has been developed. Hand v. Hand, 257 Iowa 643, 133 N.W.2d 63; Raushenberger v. Raushenberger, 258 Iowa 366, 138 N.W.2d 879. If defendant's version is accepted, the evidence is insufficient to justify a change in the legal status of the parties.

The trial court rejected plaintiff's evidence and denied a divorce. Among other findings the trial decree specifically holds the March 13th incident did not occur as plaintiff said it did and that plaintiff's claims in this regard are untrue. The remaining findings indicate the trial court simply did not believe plaintiff or her main corroborating witnesses.

II. Rule 344(f)(7) reads: "In equity cases, especially when considering the credibility of witnesses, the court gives weight to the fact findings of the trial court; but is not bound

by them." We have frequently indicated that where much depends on the credibility of witnesses we are reluctant to interfere with the trial court's findings of fact. Lehmkuhl v. Lehmkuhl, 259 Iowa 686, 145 N.W.2d 456. Yet in a review *de novo* the ultimate responsibility to make an independent assessment of the entire record lies with this court. Cole v. Cole, 259 Iowa 58, 143 N.W.2d 350, 352. In this case we must disagree with the experienced trial court's factual findings and thus with its legal conclusions.

We are impressed with the circumstance this action was actually commenced by defendant, that he broke off marriage counseling with the statement he wanted the divorce and to get it over with; and that he had refused marriage counseling at other times. None of these matters are challenged by defendant.

Failure to accept plaintiff's version of the March 13th incident constitutes rejection of the minor daughter's testimony as well. The testimony of the other two corroborating witnesses in relation to this incident developed "after the fact" evidence. But Jo Beth's testimony was as an eyewitness to the event. In this area plaintiff was fully corroborated unless the daughter was lying. If the child was truthful, then defendant was not telling the truth.

Plaintiff was not impeached in any manner in this case and we find nothing to detract from the credibility of the seven-year-old corroborating witness. The possibility of such a witness being coached is, of course, always present. We have no evidence or circumstance indicating such a possibility occurred here, or even that it is probable it occurred. The evidence was not given at the main hearing but at an interlocutory hearing before the main case of either side was presented. Thus there can be no question of matching testimony at least as to the main trial. We note that as to Jo Beth's testimony the trial judge has no peculiar advantage since the matter was considered by him, as well as by us, on a printed transcript.

If plaintiff's version of the March 13th incident is not rejected, then her testimony relating to numerous other incidents of cursing and physical violence is believable. As to sub-

stantial portions of those incidents she has corroboration from her mother and others. On the basis of the entire record we hold plaintiff has proved grounds for a divorce by a preponderance of evidence and a decree should be entered in her favor on that issue.

III. As to the issues of visitation rights, support and alimony, we consider the record insufficient for an intelligent judgment by this court. Since the trial court refused the divorce it properly did not concern itself with such matters, Hand v. Hand, supra.

The record contains some evidence upon which we could base a judgment. Defendant's income from his job averaged about $5500 during the last three years. The trial court found at time of trial the parties had accumulated a net worth of $12,500. However, the mortgage on at least one house had been foreclosed by defendant's uncle.

More than two years have passed since the trial decree was entered. Many motions before this court in relation to child support and suit money pending trial indicate the financial condition of the parties may well have changed substantially during that time. Rather than attempt to fix the financial and visitation rights of the parties at this time on inadequate information, we return the matter with instructions to enter a decree consistent with this opinion.

Custody of the four minor children shall be awarded to plaintiff. Visitation rights of defendant, alimony questions, child support questions and any other collateral issues properly raised by the parties should be determined by the trial court upon an adequate record. Temporary alimony provisions now in effect shall remain in effect until further action by the trial court.

All costs, including preparation of transcript and printing costs, are assessed against defendant with credit for advancements previously made. Attorney fees in the sum of $600 are hereby allowed in favor of plaintiff and against defendant and taxed as part of the costs of this action. As in Hand v. Hand, supra, we do not decide whether a larger amount has been earned in connection with this appeal. "[W]e hold only

that in view of the financial condition of the parties and the outcome of the appeal the sum allowed is all that plaintiff should be required to pay."—Reversed and remanded.

All JUSTICES concur except JUSTICE LEGRAND, who takes no part.