MYRTLE I. LEVICK, appellant, v. HOWARD M. LEVICK, appellee.

No. 52689.

(Reported in 154 N.W.2d 102)

November 14, 1967.

Dayton W. Countryman, of Nevada, for appellant.

Dan W. Woods, of State Center, for appellee.

LeGrand, J.—On August 23, 1966, after forty-three years and four months of marriage, plaintiff filed a petition for divorce. She alleged therein that defendant had been guilty of such inhuman treatment as to endanger her life and that he had committed adultery.

The trial court found plaintiff had failed to prove these charges by a preponderance of the evidence and dismissed the action. She asks us to reverse that decision.

Plaintiff and defendant were married on April 13, 1923. They had two children, a daughter, Donna Jeanne, and a son, Louis. Both children are now married and have for some years lived in their own homes separate from their parents.

In 1924 defendant struck plaintiff with a broom, for which misconduct he was convicted of assault and battery and fined in Municipal Court in Marshalltown, Iowa. In 1925 he threw a bucket at plaintiff, causing her some slight injury to one foot and ankle. About that time, too, defendant threw plaintiff's clothing into the front yard where it remained for two days and "was rained on" while the parties debated who was to retrieve it.

In 1931 plaintiff was ill and was hospitalized for a short period. Apparently defendant was inattentive to her during this illness. In 1946 plaintiff again was ill and again defendant was unsympathetic.

Until an event in Phoenix, Arizona, in 1966, which will be discussed later, these are the only specific instances to which plaintiff refers as constituting defendant's cruelty. Her complaints are general in nature and vague in content, consisting of charges that defendant is ill-tempered, hateful, disagreeable, irritable and overbearing. Much of the other evidence, however, particularly that of the son, Louis, tends to dispute such allegations.

In 1966 plaintiff and defendant visited their married daughter in Phoenix. They intended to stay three weeks. One purpose of the visit was to obtain a demonstrator automobile at reduced cost from the daughter's employer. There was no marital trouble at this time. The evidence shows both were looking forward to the trip. They intended to visit their daughter, obtain their car, and drive home. The matters of which plaintiff now complains did not then loom large in her life. Upon arriving in Phoenix, defendant learned the car would not be available as soon as promised. He became upset at the delay. He quarreled with his daughter, but not with his wife, about the incident. As a result of this unpleasant situation, defendant returned home after a few days. Plaintiff stayed with her daughter. At this time there was still no discussion of divorce. The record, in fact, discloses no conflict between plaintiff and defendant during defendant's short stay in Phoenix.

After returning home defendant did not communicate with

plaintiff, nor she with him, for several weeks. One apparently was equally as stubborn as the other. Ultimately, however, defendant wrote his daughter apologizing for his display of temper. About this same time Louis Levick telephoned his mother and suggested that she come home. He also suggested that she communicate with defendant concerning their differences. Plaintiff refused to do this. Plaintiff also, on at least one occasion, refused to talk to defendant on the telephone. Somewhat belatedly defendant wrote plaintiff, but this letter, if anything, merely aggravated the situation. Things went from bad to worse. Defendant did finally have a telephone conversation with plaintiff, during which she said she was never coming home. Shortly thereafter defendant terminated her right to draw on their joint checking account. Generally during this period the conduct of neither party commends itself. It must be said, however, defendant at least made an effort at reconciliation. It was perhaps a clumsy one and it was certainly ineffective; but he tried. Plaintiff did nothing.

It is ironic that this marriage, which had undoubtedly survived more serious threats, should be here over an incident so insignificant in itself. After rearing their children and seeing them settled in their own lives; after accumulating a substantial estate; after living together for almost half a century, these parties reached an impasse over, of all things, the purchase of an automobile. Now plaintiff insists her marriage has become unbearable. To prove this she places reliance on events of the remote past, most of which, until triggered by the trivial event in Phoenix, were of small importance and caused no marital discord.

■ ■ ■ I. With this background we discuss first plaintiff's charge of inhuman treatment such as to endanger her life. It is unnecessary to set out the principles governing this type of case. They have been considered by us many times, and we recently recapitulated them in Beno v. Beno, 260 Iowa 442, 149 N.W.2d 778. Among the matters reaffirmed there are these: (1) Our review is de novo, but we give considerable weight to the findings of fact by the trial court; (2) the statute requires inhuman treatment to be such that it endangers the

plaintiff's life, which may be shown by impairment of health or by reasonable apprehension such impairment will occur; and (3) we should consider the entire history of the marriage, not merely isolated acts, in determining whether grounds for divorce exist.

We have observed these rules here. We have gone back to 1923 and have carefully considered plaintiff's charges. The specific instances to which she refers could perhaps have been the basis for divorce early in the marriage, but it is difficult for us to find events occurring more than forty years ago may be urged now as showing plaintiff's health has been impaired or her life endangered. There must be some limit to judicial credulity. We think it has been reached here.

Neither can we place much stock in plaintiff's allegation concerning this defendant's unbearable attitude and general conduct. Her accusations are too hazy and indefinite, and corroboration is so unconvincing we must hold plaintiff has failed to prove these allegations. Furthermore, we are considerably impressed by the testimony of Louis Levick, who exhibited affection for both his parents and showed admirable fairness toward each. His testimony bolsters defendant's claim that plaintiff's accusations are grossly exaggerated.

As far as cruelty is concerned, this leaves for discussion only the incident in Phoenix in 1966. Defendant's conduct there was indeed boorish and inexcusable. We agree with the trial court in characterizing it as "childish." However, plaintiff's was little better. Each displayed an amazing tenacity and determination not to give in, but we find nothing in this event that would justify a divorce, either alone or considered with the other testimony produced by the plaintiff. Considering the whole record and taking into account the entire experience of this long marriage, we find, as did the trial court, the evidence fails to show any inhuman treatment which would endanger plaintiff's life.

In reaching this conclusion we are influenced by the length of time this marriage has endured and the fact that no complaint has been made by plaintiff concerning defendant's conduct until now. Although condonation was not pleaded

and is not relied upon as an affirmative defense, nevertheless we may properly consider it in determining the effect which the alleged misconduct has had upon the wronged spouse and in deciding whether such treatment has endangered her life. Elliott v. Elliott, 259 Iowa 1286, 1291, 147 N.W.2d 907, 909; Weatherill v. Weatherill, 238 Iowa 169, 185, 25 N.W.2d 336, 345, and citations.

■ II. Plaintiff also accused defendant of adultery on two separate occasions which occurred some twenty-five years apart. Again we go back to 1925 to consider plaintiff's first allegation. She states defendant spent the night in the bedroom of a young girl identified only as Gladys. According to defendant this sounds worse than it really was. Defendant admits the incident but denies any impropriety. The circumstances, as related by him, were that there had been a "home brew" party at his sister-in-law's home, attended by several couples, including plaintiff and defendant. For reasons that are unexplained in the record all of the group stayed overnight. Plaintiff slept in one room with her daughter, who was then a small child. The others, consisting of three or four couples, all slept fully clothed in other bedrooms. Defendant was in the bedroom with Gladys. He categorically denied sexual intercourse or other misconduct with her. Defendant's explanation of this event was not challenged by plaintiff. If she desired to rely upon this as a ground for divorce, we cannot understand why she postponed her complaint until now. We recognize that this is not necessarily fatal to plaintiff's rights but we take into consideration the fact this alleged misconduct occurred in 1925; no complaint was made concerning it until now; it apparently caused no rift in the married life of these parties; and defendant's explanation is not seriously disputed by plaintiff, who produced no evidence whatever tending to substantiate her claim of misconduct. When all these factors are considered, we find plaintiff has failed to sustain her belated accusation.

Plaintiff levels one other specific charge of adultery against defendant. This involves alleged intimacy between plaintiff's stepmother and defendant, occurring sometime in the early

1950's. The exact date is not set out, although the record shows that the stepmother died in 1958. She was then 73 years old, fourteen years older than defendant. Plaintiff testified defendant some years later volunteered the information that he had sexual intercourse with her stepmother. This admission was allegedly made also to plaintiff's brother and sister-in-law, both of whom so testified by deposition. Defendant vigorously denied both the accusation itself and the statement.

If plaintiff is to be granted a divorce, it must be upon this ground alone. It is the only allegation for which there is any substantial support in the record.

Defendant denies having had sexual intercourse with plaintiff's stepmother. Defendant testified he "had never touched or had any physical contact of any kind" with her. Defendant denied also the statements concerning sexual intercourse attributed to him by three witnesses.

█ This question must be resolved upon the credibility of the witnesses. Plaintiff's version, supported by the depositions of two witnesses, is irreconcilable with defendant's testimony, which is uncorroborated. As previously mentioned we are not bound by the findings of the trial court, but we place considerable reliance thereon, particularly when the credibility of witnesses is directly involved, as it is here. We said in Cimijotti v. Cimijotti, 255 Iowa 77, 79, 121 N.W.2d 537, 538: "In matters of this nature, so much depends upon the credibility of the witnesses and their attitude, appearance and demeanor upon the witness stand that we give considerable weight to the decision of the trial court who had the opportunity to observe them testify." See also Klepper v. Klepper, 234 Iowa 1138, 1142, 15 N.W.2d 213, 215; Lemkuhl v. Lemkuhl, 259 Iowa 686, 145 N.W.2d 456, 460; Murray v. Murray, 244 Iowa 548, 553, 57 N.W.2d 234, 237, and citations.

█ We have also said several times the utter improbability of many of the charges together with the plaintiff's attitude, sincerity and demeanor may be significant. Clough v. Clough, 248 Iowa 1090, 1098, 84 N.W.2d 16, 20; Baker v. Baker, 252 Iowa 1161, 1163, 110 N.W.2d 236, 237; Bullocks v. Bullocks, 259 Iowa 496, 144 N.W.2d 924, 926; Iowa Rules of Civil Procedure 344(f)(7).

352

The trial court found credibility to be on the side of the defendant and rejected plaintiff's version as being unworthy of belief. In doing so the trial court specifically pointed out the improbability of plaintiff's accusation and the evidence supporting it. The trial court further found the testimony of plaintiff and her corroborating witnesses unsatisfactory and lacking in persuasion. We recognize, as pointed out in Jensen v. Jensen, 261 Iowa 38, 152 N.W.2d 829, 832, the trial judge has no advantage in weighing testimony given by deposition. But we recognize, too, the principal witnesses here are plaintiff and defendant. On the whole record we are not inclined to disagree with the trial court's findings.

We hold the trial court was right in dismissing plaintiff's petition and we affirm. Before leaving this case we repeat the exhortation we delivered in Elliott v. Elliott and Lemkuhl v. Lemkuhl, both supra. It is unfortunate the parties have found it necessary to seek here an answer which can come only from "a little patience, a spirit of forgiveness and a measure of tolerance for the frailties of human nature." It is hoped the matter of reconciliation will receive further consideration, terminating in a happy solution of their differences.—Affirmed.

All JUSTICES concur.